ᴏRDERED in the Southern District of Florida on 6 August 2009



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| In re | Case Nos.   85-00512-BKC-AJC through |
| | 85-00519-BKC-AJC |
| EVANS PRODUCTS COMPANY, et al., | |
| | Chapter 11 |
|       Reorganized Debtors | |
| | |
| JELD-WEN, INC., f/k/a Grossman's Inc., | |
| | Adv. Pro. No. 08-01643-AJC |
|       Plaintiff, | |
| | |
|       v. | |
| | |
| MARY VAN BRUNT and | |
| GORDAN VAN BRUNT, | |
| | |
|       Defendants. | |

## MEMORANDUM OPINION GRANTING MOTION FOR SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS

This matter is before the Court for decision on cross-motions for summary judgment filed by JELD-WEN, inc. f/k/a Evans Products Company ("JELD-WEN") and Gordon Van Brunt, individually and on behalf of the Estate of Mary Van Brunt (the "Van Brunts") upon JELD-

WEN's Complaint for 1) Determination that Defendants' Claims Have Been Discharged, 2) Permanent Injunction Enjoining Defendants' Prosecution of Claims Against JELD-WEN, Inc., and 3) Award of Damages (the "Complaint").

## I.
## UNDISPUTED FACTS

### A. The Van Brunts' State Court Action against JELD-WEN

Mary Van Brunt died of mesothelioma on August 10, 2008 (Dkt. No. 21, Ex. A). She was diagnosed with the disease in the Spring of 2007, after first manifesting symptoms in the Fall of 2006 (Dkt. No. 21, Ex. B. at 6).

Seeking legal redress for their injuries relating to Mary Van Brunt's mesothelioma, the Van Brunts filed suit in May, 2007 against, *inter alios*, JELD-WEN in the Supreme Court of the State of New York, County of Erie (the "State Court Action") (Dkt. No. 19, Ex. D). In the State Court Action, the Van Brunts allege that Mary Van Brunt purchased asbestos containing products from Grossman's Inc. ("Grossman's") beginning in the Spring of 1977, and through the use of such products was exposed to asbestos fibers (*Id.*). The Van Brunts allege that this exposure resulted in the mesothelioma from which Mary Van Brunt died (*Id.*).

### B. JELD-WEN is the successor to Grossman's, which has reorganized under Chapter 11 of the Bankruptcy Code in this Court in 1985 and in the bankruptcy court for the District of Delaware in 1997

JELD-WEN is a successor to a two-time debtor. On March 11, 1985, Evans Products Company ("Evans Products") and several of its subsidiaries (including Grossman's) filed for relief in this Court under Chapter 11 of the Bankruptcy Code (the "Florida Bankruptcy") (Dkt. No. 20, Ex. E at 7). The debtors filed a plan of reorganization, which was confirmed by order of

this Court on July 2, 1986 (Dkt. No. 20, Ex. G). Pursuant to the debtors' plan, reorganized Evans Products took the name of its subsidiary, Grossman's, Inc., upon the effective date of the plan (Dkt. No. 20, Ex. E at 34).

Approximately 11 years later, on April 7, 1997, Grossman's again filed for relief under Chapter 11 of the Bankruptcy Code (Dkt. No. 21, Ex. B at 3). This time, however, it filed in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court") (*Id.*). A joint plan of reorganization for Grossman's was confirmed by the Delaware Court on December 9, 1997 (*Id.*). Pursuant to Grossman's Delaware plan of reorganization, JELD-WEN acquired a majority interest in the stock of Grossman's (Dkt. No. 19, Ex. C), and ultimately acquired the balance of the Grossman's stock, merging the companies in March 1999, with JELD-WEN surviving (*Id.*). It is uncontested that JELD-WEN is the successor-in-interest to Evans Products.

## C. Before seeking relief in this Court, JELD-WEN sought to have the State Court Action enjoined by the Delaware Court.

Faced with the Van Brunts' State Court Action, JELD-WEN first sought relief from the Delaware Court, requesting a ruling by that Court that the State Court Action had been discharged in Grossman's 1997 Delaware bankruptcy case (Dkt. No. 21, Ex. B at 2). On May 9, 2007, JELD-WEN requested the Delaware Court to reopen the Delaware bankruptcy case (Dkt. No. 21, Ex. B at 6). This relief was granted and JELD-WEN filed its Complaint for (1) Permanent Injunction Enjoining Defendants' Prosecution of Claims Against JELD-WEN, Inc.; (2) Determination that Defendants' Claims Have Been Discharged; and (3) Award of Damages on June 29, 2007 (the "Delaware Complaint") (Dkt. No. 21, Ex. B at 2). The crux of the Delaware Complaint was that the State Court Action had been discharged in the Delaware

bankruptcy, because the Van Brunts' claims arose at the time Mary Van Brunt was allegedly exposed to the asbestos containing products she purchased from Grossman's in 1977 (*Id.*). In response to JELD-WEN's argument, the Van Brunts asserted that their claims did not arise until, at the earliest, 2006, at the time Mary Van Brunt first manifested symptoms of her asbestos disease (*Id.*).

JELD-WEN and the Van Brunts filed cross-motions for summary judgment on the Delaware Complaint and, after full briefing and evidentiary hearing, the Delaware Court rendered judgment for the Van Brunts. The Delaware Court determined that its "sole function" was to "determine whether the state court claims are claims that arose prior to the effective date of the [p]lan and therefore barred from assertion at this time." *In re Grossman's, Inc. (JELD-WEN, Inc. v. Van Brunt)*, 389 B.R. 384, 388 (Bankr. D. Del. 2008). The Delaware Court went on to hold that the Van Brunts' asbestos claims did not arise until Mary Van Brunt had symptomatic manifestations of her asbestos injury: "Because Mary Van Brunt did not manifest her injuries until years after the Grossman's Plan was confirmed, this Court concludes that the Confirmation Order, which only purports to enjoin claims arising prior the effective date of Grossman's Plan, does not bar the Van Brunts' State Court Claims against JELD-WEN."[1] *Id.* at 390.

JELD-WEN then came to this Court, seeking a ruling that the Van Brunts Claims were discharged by this Court's 1987 confirmation order. On July 31, 2008, JELD-WEN filed a

---

[1] JELD-WEN appealed this ruling to the Delaware District Court by notice filed on June 16, 2008 and, after full briefing, the District Court upheld the Delaware Court in an opinion entered on February 5, 2009, confirming that the asbestos-related claims of the Van Brunts (other than some incidental state law warranty claims) did not arise until the manifestation of Mary Van Brunt's asbestos disease in the Fall of 2006. *See In re Grossman's, Inc. (JELD-WEN, Inc. v. Van Brunt)*, 2009 WL 273323 (D. Del., Feb. 5, 2009) (slip copy).

4

motion to reopen the Florida bankruptcy case and subsequently filed the Complaint, defined *supra*, that is now before this Court (Dkt. No. 1). JELD-WEN's argument in this Court is substantively the same as that asserted in the Delaware Court—*i.e.*, that the State Court action was discharged in Grossman's 1987 bankruptcy, because Mary Van Brunt's claims arose in 1977, at the time of her asbestos exposure. After cross-motions for summary judgment and full briefing, this Court held a hearing on February 19, 2009.

Upon due consideration of the post-hearing submissions of the parties and the arguments of counsel, and for the reasons set forth herein, the Court concludes that JELD-WEN is not estopped from litigating when the Van Brunt's asbestos claims arose for purposes of discharge under the Florida Confirmation Order. However, even though JELD-WEN is not estopped from litigating the issue of when the Van Brunts' claims arose, this Court nonetheless holds that the Van Brunts' claims were not discharged by the Florida Confirmation Order.

## II.
## SUMMARY JUDGMENT STANDARD

Both parties filed their motions for summary judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56. The rule provides that summary judgment shall be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

Parties seeking summary judgment always bear the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions,

answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

To determine whether summary judgment is appropriate, the record presented is reviewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, if the evidence demonstrating the need for trial "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250, 106 S. Ct. at 2511.

## III.
## ESTOPPEL DOES NOT APPLY

The Van Brunts assert that the prior ruling of the Delaware Court precludes this Court from ruling on whether the State Court Claims were discharged by the Confirmation Order in this case. However, the Court believes the ruling of the Delaware Court does not preclude it from deciding whether the Florida Confirmation Order discharged the Van Brunts' claims.

### 1. JELD-WEN's Claims are not Barred by the Doctrine of Res Judicata

The Van Brunts contend that the doctrine of *res judicata*, or "claim preclusion" should be applied to prevent JELD-WEN from litigating any claim or cause of action which was or could

have been litigated in the Delaware Adversary. In the Eleventh Circuit, a party seeking to invoke *res judicata* must establish its propriety by satisfying four initial elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action. *In re Piper Aircraft Corporation*, 244 F.3d 1289, 1296 (11th Cir. 2001), *cert. denied, TDY Industries v. Kaiser Aerospace and Electronics Corp.*, 534 U.S. 827 (2001). If even one of these elements is missing, *res judicata* is not available. *Id.* If these initial four elements are satisfied, then the court must then "determine whether the claim in the new suit was or could have been raised in the prior action." *Id.* At all times, the party asserting *res judicata* has the burden to show that the later-filed suit is barred. *Id.*

Importantly, to determine whether the causes of action are the same, "a court must compare the substance of the actions, not their form." *Id.* at 1297 (citations omitted). "It is well settled that *res judicata* turns primarily on the commonality of the *facts* of the prior and subsequent actions, not on the nature of the remedies sought." *Id.* at 1295 (emphasis in original). The fact that both suits involved essentially the same cause of allegedly wrongful conduct is not decisive, "nor is it dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues." *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1463 (2nd Cir. 1996), citations omitted, *cert. denied*, 522 U.S. 812 (1997).

### a. The Applicable Law Differs

*Res judicata* cannot be imposed when the law applied in the first action differs from the applicable law in the second action. In 1953, the Supreme Court of Florida stated, "the cases are legion which hold that *res judicata* is not a defense in a subsequent action where the law under

which the first judgment was obtained is different than that applicable to the second action, or there has been an intervening decision, or a change in the law between the first and second judgment, creating an altered situation." *Wagner v. Baron*, 64 S.2d 267 (Fla. 1953) (citing cases); s*ee also Mission Theaters, Inc. v. Twentieth Century Fox Film Corporation*, 88 F.Supp. 681, 684 (W.D. Missouri 1950).

The law on which the Delaware Court relied differs from the law that is applicable to the claims in this adversary proceeding. The Delaware Court relied on the Third Circuit's *Frenville* decision, which requires the application of the "accrued state law claim" test to determine when the Van Brunt's claims arose, and ultimately concluded the claims were not discharged in the Delaware bankruptcy case. In this action, JELD-WEN seeks a determination of whether the Van Brunt's claims were discharged in the Florida bankruptcy case. In this Court, determination of that issue necessarily requires the applicability of binding precedent in the Eleventh Circuit, and the Eleventh Circuit Court of Appeals has expressly rejected the test established in *Frenville*. This Court believes that applying the law of the Eleventh Circuit to determine if the Florida Confirmation Order discharged the State Court Claims implicates different laws and state different causes of action.

### b. The Adversary Proceedings Do Not Involve the Same Cause of Action

The cases do not involve the same causes of action. The court in *In re Walker*, 356 B.R. 877 (Bankr. S.D. Fla. 2006), stated, "In general, cases involve the same causes of action for purposes of *res judicata* if the present case 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action.'" 356 B.R. at 891 (citations omitted).

8

"Put another way, they must 'arise out of the same transaction or series of transactions.'" *Id.* (citations omitted).

This adversary proceeding does not arise out of the same transaction or series of transactions as the Delaware Adversary. In this adversary, JELD-WEN seeks a determination that this Court's Confirmation Order and the Evans Plan by operation of law barred the Van Brunts' State Court Claims under the law in the Eleventh Circuit. At issue is what "claims" were included in the Evans Plan and the related Confirmation Order. In the Delaware Adversary, however, JELD-WEN asked the Delaware Court to determine whether the Delaware Confirmation Order and the Delaware Plan discharged the State Court Claims under the law in the Third Circuit.

Each Plan and Confirmation Order presents a separate set of circumstances. And whether particular claims are affected, enjoined, discharged, or otherwise disposed of by each Plan and Order depends on critical analysis and interpretation of each transaction and the relevant facts. For example, whether there were any pending asbestos claims in 1997 against Grossman's and whether Grossman's officers knew of potential asbestos claims at the time of the Delaware Bankruptcy were material to the Van Brunts' argument in the Delaware Adversary that the State Court Claims were not discharged. (Dkt. No. 28 at Ex. B.) Whether there were any asbestos claims pending in 1985 against Evans and whether Evans' officers knew of potential asbestos claims at the time of the Florida Bankruptcy are different yet equally important facts relating to the discharge question.

The Plans are different transactions, and the question of whether the State Court Claims were discharged necessarily requires review of the facts and circumstances surrounding each

9

transaction. The substance of JELD-WEN's causes of action is not the same. The primary issue is not the same, the evidence is not the same, and the applicable law is not the same. Given that the two adversary proceedings do not involve the same cause of action, *res judicata* should not be applied.

### c. Claim not Previously Raised

JELD-WEN sought a declaration under the Declaratory Judgment Act that the Van Brunts' State Court Claims were discharged by the Confirmation Order entered by the Delaware Bankruptcy Court. The Declaratory Judgment Act "does not accord every judgment in a declaratory suit the 'force and effect of a final judgment,' but gives that import only to '(a)ny such declaration' (emphasis supplied), that is, any judgment that by its terms states the relations of the parties with respect to the issue in question." *Kaspar Wireworks, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 537 (5th Cir. 1978). The Eleventh Circuit Court of Appeals reiterated that, "The *Kaspar* court made clear that ordinary principles of *res judicata* cannot be applied automatically to declaratory judgments. The [*Kaspar*] court emphasized the supplemental nature of such relief requires that preclusive effect can only be given to relitigation of any issue actually litigated and necessary to the judgment rendered." *Empire Fire & Marine Insurance Company v. J. Transport, Inc.*, 880 F.2d 1291, 1296 (11th Cir. 1989) (citing *Kaspar*, 575 F.2d at 530).

The claim asserted by JELD-WEN in this adversary proceeding – whether this Court's Confirmation Order discharged the Van Brunts' State Court Claims – was not litigated in the Delaware Adversary. Because the Delaware Adversary was a declaratory judgment action, *res*

*judicata* cannot apply to any claims that were not actually litigated. For these reasons, *res judicata* should not be applied.

## 2. Doctrine of Collateral Estoppel Does Not Apply

The Van Brunts also contend that the doctrine of collateral estoppel, or "issue preclusion," should be applied to prevent JELD-WEN from asking this Court to find its Confirmation Order discharged the State Court Claims. The Van Brunts argue that the issue of when the State Court Claims arise was already litigated in the Delaware Adversary. A party asserting collateral estoppel must establish all four of the following elements: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the latter case. *In re Southeast Banking Corporation*, 69 F.3d 1539, 1553 (11th Cir. 1995). With respect to the issue of discharge in a bankruptcy, the Eleventh Circuit Court of Appeals declared, "collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, however, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability." *Id.*, citing *In re Helpern*, 810 F.2d 1061, 1064 (11th Cir. 1987).

The issue at stake in this adversary is whether this Court's Confirmation Order and the approved Plan bar the State Court Claims. The issue at stake in the Delaware Adversary was whether the Delaware Confirmation Order and Delaware Plan bar the State Court Claims, and the Delaware Court ruled they do not. *Southeast Banking Corporation* prohibits a relitigation of

factual issues decided in the Delaware Adversary, and JELD-WEN does not seek to relitigate the factual findings by the Delaware Court. However, *Southeast Banking Corporation* makes clear this Court has the exclusive jurisdiction to determine the legal issue of whether the State Court Claims were discharged by its Order. The Delaware Court's legal conclusion that, under binding Third Circuit authority, the Delaware Confirmation Order did not discharge the State Court Claims is not binding on this Court. The issue at stake is not identical, so collateral estoppel does not apply.

### 3. Doctrine of Judicial Estoppel Does Not Apply

The Van Brunts next contend that by seeking a declaratory judgment in the Delaware Adversary that the Delaware Plan and Delaware Confirmation Order discharged the State Court Claims, JELD-WEN was affirmatively stating the State Court Claims existed after the effective date of the Florida Plan. According to the Van Brunts, the doctrine of judicial estoppel therefore precludes JELD-WEN from arguing that the State Court Claims were discharged by the Florida Confirmation Order.

Under the doctrine of judicial estoppel, a party who asserts a particular claim cannot afterward assert a position inconsistent with such claim to the prejudice of the same adversary who acted in reliance on the prior claim. *St. George Island, Ltd. v. Sun Bank, N.A.*, 96 B.R. 345, 348 (Bankr. N.D. Fla. 1989). Although the Van Brunts logically argue that JELD-WEN must have believed the claims were not discharged at the time of the Delaware Bankruptcy because they sought a determination of discharge in the Delaware Bankruptcy first, judicial estoppel is not appropriate as JELD-WEN did not take any position on the effect of the Florida Confirmation Order in the Delaware Adversary.

## IV.
## ASBESTOS PERSONAL INJURY CLAIMS ARE AN EXCEPTION TO THE ANALYSIS ARTICULATED BY THE ELEVENTH CIRCUIT IN *PIPER* AND WERE NOT PREVIOUSLY DISCHARGED IN THE FLORIDA BANKRUPTCY.

Even having concluded that estoppel does not preclude JELD-WEN from litigating the issue of dischargeability before this Court, this Court nonetheless concludes that the Van Brunts' claims were not discharged by the Florida Confirmation Order. Thus, even if this Court were to apply the law in the Eleventh Circuit and even if the Court found the Van Brunts' claims to have arisen prepetition, the Court does not believe the claims were discharged.

Courts have long recognized the unique nature of asbestos-related illnesses and struggled with how to balance the need to make asbestos victims whole without crippling business with asbestos-related liability. Courts have recognized that "[c]umulative disease cases are different from the ordinary accident or disease situation," and that the significant characteristic of asbestos-related diseases is "their unusually long latency period." *Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 121 (D.C. Cir. 1982); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 639 (2d Cir. 1988). As pointed out by the Second Circuit Court of Appeals:

> An individual might not become ill from an asbestos-related disease until as long as forty years after initial exposure. Hence, many asbestos victims remain unknown, most of whom were exposed in the 1950's and 1960's before the dangers of asbestos were widely recognized. These persons might not develop clinically observable symptoms until the 1990's or even later.

*Kane v. Johns-Manville Corp.*, 843 F.2d at 639.

Even the United States Supreme Court has recognized problems associated with the special, latent nature of asbestos injuries when it addressed the difficulty of providing notice to asbestos claimants for the purpose of class certification:

13

> Many persons in the exposure-only category...may not even know of their exposure, or realize the extent of the harm they may incur. Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out. Family members of asbestos-exposed individuals may themselves fall prey to disease or may ultimately have ripe claims for loss of consortium. Yet large numbers of people in this category - future spouses and children of asbestos victims-could not be alerted to their class membership. And current spouses and children of the occupationally exposed may know nothing of that exposure.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628, 117 S. Ct. 2231, 2252 (1997).

Asbestos victims are thus placed in a situation like no other tort victims. Decades might pass before these persons even realize any harm has come to them. This was, and continues to be, highly problematic for debtors with significant asbestos liabilities seeking to reorganize in bankruptcy – how can they consolidate and settle all of their tort cases in a single forum when not only can the debtor not identify the tort victims, but the victims cannot even identify themselves. A solution to the unique, unprecedented and far-reaching nature of asbestos injuries was arrived at by the Bankruptcy Court for the Southern District of New York in the historic *Johns-Manville* case when it created a remedy for yet-to-be-identified asbestos victims in the form of a trust funded by the debtor and its insurers to which claims would be channeled; in turn, claimants would be enjoined from litigating against such debtors. *See generally In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986); *aff'd* 78 B.R. 407 (S.D.N.Y. 1987); *aff'd* 843 F.2d 636 (2d Cir. 1988). Congress has since codified the trust/channeling injunction mechanism pioneered in *Johns-Manville* in section 524(g) of the Bankruptcy Code, and it has become the established method for debtors with significant asbestos liability to seek and attain reorganization.

While the Eleventh Circuit has previously held, in *Piper Aircraft*, that persons who *might*

be harmed in the future due to defects in the small airplanes manufactured by the debtor did not have "claims" as defined in section 105 of the Bankruptcy Code because those future "claimants" currently had no established relationship with the prepetition conduct of the debtor, this Court believes the *Piper Aircraft* future claimants are distinguishable from asbestos claimants. *See Piper Aircraft*, 58 F.3d at 1577. In *Piper Aircraft*, the Eleventh Circuit determined that any potential liability for manufacturing and design defects in aircraft is too remote and attenuated to be rationally predicted. However, the injury wrought by asbestos is inexorable from the moment of first contact, even if the individual tort victim is unaware of the damage during the lengthy latency period. Thus, the Court does not find the analysis set out by the Eleventh Circuit in *Piper Aircraft* to be useful in asbestos cases. The *Piper Aircraft* holding does not appear to have been intended to apply in the narrow, unique arena of asbestos claims.

Additionally, although distinguishable from the facts of this case, the Court's ruling in *In re Pan American Hospital Corporation*, which turns on the existence of an established prepetition relationship, is instructive. 364 B.R. 839 (Bankr. S.D. Fla. 2007). In that case, this Court found that a medical malpractice victim's claim against the debtor arose "at the earliest point in the relationship between victim and wrongdoer." *Id.* at 848. The claim arose when the tort victim was improperly intubated, an act of medical negligence that lead inexorably and visibly to the patient's death. *Id.* at 842. Because the improper intubation occurred – and the injury fully manifested itself – prepetition, the victim in the case had a decidedly prepetition claim. Although the discussion in *Pan American Hospital Corporation* alludes, in *dicta*, to injuries in asbestos cases as generally falling into the prepetition category, it does so in the context of "future [asbestos] claimants [who] were individuals who were known to have had

prepetition exposure to the dangerous product." *Id.* at 845. However, the extremely long latency period for asbestos-related illness means that, while many victims may know of their exposure, if not their illness, at the time the tortfeasor files for bankruptcy and will decidedly have prepetition claims, others will have no knowledge of their exposure or their illness, and cannot be said to have had any cognizable relationship with the debtor, or any identifiable injury at the time of the bankruptcy.

The end result of strictly applying the ruling in *Piper Aircraft* would essentially deny personal injury asbestos claimants (due to the extremely latent nature of their injuries) recovery from debtors, absent the debtor's choice to channel its asbestos liabilities to a trust pursuant to section 524(g) or its common-law predecessors or to otherwise provide for such claimants in a confirmed plan. Congress and the courts did not intend that asbestos claimants should have no ability to recover from a bankruptcy debtor simply because the debtor did not avail itself of the mechanisms for obtaining a channeling injunction or because, at the time it confirmed its plan, the debtor saw no need to otherwise provide for such asbestos claims by payment or other form of compensation. It seems much more plausible that Congress intended that debtors who have no reason to believe they will face significant, if any, asbestos-related liabilities will not be able to discharge those potential future asbestos claims without providing for such class of claims in a confirmed plan. If any unknown asbestos injuries manifest themselves after plan confirmation, the debtor, or a successor in interest, must deal with them in the ordinary course of business. Congress, in acting to provide a means for those companies facing vast amounts of asbestos-liability, did not intend to give those companies who might face isolated cases post-reorganization a free pass. Therefore, even assuming that Grossman's earnestly believed, at the

time of plan confirmation, that it had no asbestos liabilities and would face none in the future, it should not be given the benefit of a discharge of its future asbestos liabilities without having to endure the costs and rigors associated with providing payment or compensation for such claims.

JELD-WEN argues that asking it to defend against claims for harms caused to the Van Brunts by its predecessors will have a "chilling effect of the Chapter 11 process." However, the natural balance that Congress has effected through the enactment of section 524(g) should serve to calm any fears of such a "chilling effect." First, any debtor that reasonably believes it will have significant asbestos liabilities in the future will invariably take advantage of the channeling injunction provided by section 524(g), incurring the costs and labors associated with complying with that statute. On the other hand, debtors who foresee having few, if any, asbestos claims asserted against them in the future, may instead take the risk of having to defend those few suits in the future, rather than incur the costs and other burdens associated with obtaining a channeling injunction to have them discharged. Buyers, such as JELD-WEN, who obtain the assets of debtors through Chapter 11 reorganizations will balance these same risks and benefits regarding the possibility of succeeding to asbestos liabilities when deciding whether to purchase debtors or their assets. Requiring JELD-WEN to defend against a solitary asbestos claim, which it should have understood had at least the slightest possibility of arising when it purchased the assets of and assumed the liabilities of Grossman's (a company it knew to have been engaged in the retail sale and distribution of building materials) is not unreasonable and should not have a "chilling effect" on other Chapter 11 sales.

The Court of Appeals for the Eleventh Circuit has not squarely considered the special case of asbestos claimants; however, application of the *Piper Aircraft* holding would, if applied

17

to the Van Brunts, impose too harsh a result on claimants who do not or cannot know at the time of the initial contact that serious injury may befall them decades later. Although section 524(g) did not exist at the time of the Florida Bankruptcy, the Court believes the Van Brunts' asbestos claims were not discharged, despite the discharge order, as such claims were not specifically addressed in the confirmed plan. The purchaser in the Florida Bankruptcy could have purchased Debtors' assets rather than the corporation, but that is not what it decided to do. Because the Florida Bankruptcy was not simply a sale of assets pursuant to 11 U.S.C. §363, the Court believes the Debtors' liability for asbestos claims passed through the Florida Bankruptcy. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that summary final judgment is granted in favor of Defendants. A separate final judgment in favor of Defendants, consistent with this opinion, will be entered.

###

Copies furnished to:

Charles W. Throckmorton
Cliff I. Taylor, Esq.
Christopher M. Alston, Esq.
Francis L. Carter, Esq.
Andrea Hartley, Esq.

[Attorney Throckmorton is directed to serve copies of this order on all interested parties and to file a certificate of service]